UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:07 CR 88 CAS |
| ) | DDN |
| RUBEN GONZALES, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on March 9, 2007.

Defendant Ruben Gonzales has moved for suppression (oral motion filed February 12, 2007); and the government has moved for a hearing regarding suppression issues (oral motion filed February 12, 2007).

From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. On February 1, 2007, St. Louis County Multi-jurisdictional Drug Task Force Detectives McDonald Brand and Joseph Smith were investigating travelers on Interstate 44 (I-44) in eastern Missouri. They were dressed in civilian clothes and drove an unmarked police car. They encountered a 1999 Jeep Cherokee whose occupants slept in a rest area on the highway. From their experience, they knew that drug traffickers sometimes sleep at highway rest areas, rather than leave a "paper trail" of their actions by sleeping in motels. Det. Brand ran a computer check of the Jeep's Oklahoma license plate. The license plate number was reported registered to a resident of Oklahoma City,

known to be a source city for illicit drugs; the plate registration records also bore a social security number, the record of which indicated that the person to whom the social security number belonged was dead.

2. When the occupants of the Jeep Cherokee got back on I-44 they headed east. Detectives Brand and Smith followed the Jeep in their vehicle. At approximately 8:00 a.m., they arranged for a uniformed local officer to stop the Jeep. St. Louis County Police Officer Michael Jordan was on patrol in a marked police car when he was directed to stop the Jeep on I-44.

3. Officer Jordan drove up behind the Jeep Cherokee and followed it eastbound in the middle lane of the highway. Officer Jordan saw the Jeep being driven with its right-side wheels traveling into the adjacent right-hand lane; the Jeep in effect was traveling in two lanes instead of one. Then, the vehicle returned to the center of the middle lane. Officer Jordan then saw the Jeep move completely into the right-hand lane without signaling. Each of these actions was a violation of the Missouri traffic laws.

4. Officer Jordan then turned on his emergency lights and the driver of the Jeep immediately pulled the vehicle over to the left-hand side of the highway half in a grassy area and half in the emergency stopping lane. Officer Jordan drove up and parked behind the Jeep and notified his dispatcher of the stop.

5. Officer Jordan got out of his police car and walked up to the Jeep. Although he was armed, he did not remove his gun from its holster. He saw that inside the Jeep were the driver, a man later identified as Ruben Gonzales, and an adult woman with an infant. The woman was identified as Jennifer Larkins. The officer asked for and received their identifications. Officer Jordan stated he stopped them because of the failure to drive in one lane and the unlawful lane change without signaling. He then asked them where they had come from and where they were going.

Ruben Gonzales responded that they were traveling to Indianapolis to see his uncle.

6. As Officer Jordan was returning to his police car, the Drug Task Force detectives arrived and parked behind the police car. Officer Jordan turned the investigation over to them. He ultimately issued two traffic tickets to Gonzales, one for failure to maintain a single lane and the other for changing lanes without signaling.

7. Both Larkins and Gonzales said they were from Oklahoma City. Det. Smith asked Gonzales why they were traveling and Gonzales said he was on his way to Indiana to show his newborn baby to his uncle. When she was asked about the reason for the trip, Larkins said they were going to Indianapolis to see Gonzales's uncle's new baby. Det. Smith asked Larkins how many children the uncle had; she was unsure.

8. Because they were physically close to the I-44 rush hour traffic, which was hazardous, Det. Smith asked Gonzales and Larkins whether Gonzales would drive the Jeep to a nearby strip mall parking lot. Gonzales agreed to do so[1] and followed the police to the parking lot.

---

[1]Defendant Gonzales testified at the evidentiary hearing that the officers began to search the Jeep while it was parked alongside the highway and that he did not consent to driving to the parking lot, but was told to do so. The undersigned credits the testimony of the officers that Gonzales consented to move his vehicle to the nearby parking lot, because of the hazardous condition of being on the shoulder during the congested rush hour highway traffic. Further, defendant's credibility was greatly demeaned by his cross-examination testimony that he and Larkins had embarked on a long winter drive, on one day's notice to the uncle, to visit the uncle whom he last saw two years earlier, in a Jeep vehicle provided by a third party friend the day before the trip. Further, on cross-examination, defendant testified that he did not know the uncle's telephone number or address in Indianapolis, and he had never before been to the uncle's residence. The officers' testimony is also credited over that of defendant as to where the search of the Jeep began, at the Fenton police department.

9. After they arrived and parked, Det. Smith asked Gonzales for consent to search the Jeep. Gonzales gave his consent to search. While they were there, Canine Police Officer Gary Sedoma and his trained dog arrived and examined the Jeep by walking around it. The dog alerted to the vehicle, thereby indicating the presence of contraband drugs.

10. Det. Smith then asked Gonzales whether the Jeep could be moved to the City of Fenton Police Department, out of concern for the infant (because the weather was cold) and to facilitate the search of the Jeep. Gonzales agreed to move the Jeep to the police station.

11. During the search of the Jeep, Det. Brand removed the spare tire from the center area of the back of the Jeep. Under the tire was a tire jack. The officer saw that the usually rigid and fixed paneling under the jack moved. So, he twisted the jack and the panel popped loose, disclosing a hidden compartment with wrapped packages which, from their appearance, the officers believed contained cocaine. Ultimately, 28 one-kilogram packages of cocaine were removed from the Jeep.

12. At that time, Gonzales was placed under arrest. Without being asked any question, Gonzales said he did not know the drugs were there.

13. After the discovery of the drugs, federal Drug Enforcement Administration Special Agent Matt McKnight was notified of the investigation of the Jeep. He went to the Fenton police department and helped in the removal of the 28 kilograms of cocaine. He also looked inside the Jeep and seized two cell phones which were still inside their packages; the phones were located in the center seat console. He also seized a cell phone from Gonzales's person and another one from Larkins's person. The remaining personal belongings inside the Jeep were given to Gonzales and Larkins.

**DISCUSSION**

The cocaine seized from the Jeep, the cell phones, the Jeep, and the statements made by the defendant on February 1, 2007, should not be suppressed.

**A. Physical Evidence**

The motion to suppress the physical evidence in the Jeep, including the cocaine and the two packaged cell phones, should be denied. First, Officer Jordan lawfully stopped the vehicle defendant was driving. The officer personally observed that the vehicle was being operated in violation of state law, because the driver was driving in two lanes and changed lanes without signaling. See United States v. Bueno, 443 F.3d 1017, 1024 (8th Cir. 2006) (reasonable suspicion to stop car with no license plates, because that is a violation of state law); United States v. Smart, 393 F.3d 767, 770 (8th Cir.), cert. denied, 545 U.S. 1121 (2005). Even if the traffic violation stop was merely pretext for a drug investigation, that does not render the stop improper. "A valid traffic stop may not be challenged on the ground that it was a pretext for other investigation." United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 646 (8th Cir. 1999).

Having observed a violation of the traffic laws, the officers were authorized to stop the vehicle and to conduct an investigation relevant to the observed violation. "Once officers legitimately stop a vehicle, they are entitled to conduct an investigation that is reasonably related in scope to the circumstances that initially justified the stop." Bueno, 443 F.3d at 1025. This includes detaining the offending motorist while the officer checks the vehicle's registration, driver's licenses, and to write a citation or warning. $404,905.00, 182 F.3d at 647. Here, Officer Jordan rightfully detained defendant

- 5 -

while he inquired about the vehicle's occupants' identities and their travel plans, and wrote the citations.

The drug investigation activities of the officers were also proper. Defendant argues that the cocaine and his statements should be suppressed because, other than the traffic law violation, there was no lawful basis for the drug investigation activities of the officers. "Whether an officer has reasonable suspicion to expand the scope of a traffic stop is determined by looking at "the totality of the circumstances, in light of the officer's experience." <u>United States v. Linkous</u>, 285 F.3d 716, 720 (8th Cir. 2002). "[R]easonable suspicion [is] 'a particularized and objective basis' for suspecting criminal activity." <u>Linkous</u>, 285 F.3d at 720 (quoting <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996)).

The officers had reasonable suspicion that other criminal activity, besides the traffic violation, occurred or was occurring, and therefore, had a basis to perform investigatory acts pertaining to that suspicion. Prior to the stop, Officers Smith and Brand knew that the vehicle stopped was registered to an owner in a city known as a source of illicit drugs. The social security number associated with the vehicle registration belonged to a dead person. The occupants of the Jeep were sleeping at a rest stop, and the officers knew, from their experience, that drug mules often do that so they do not leave a "paper trail."

After the vehicle was stopped, more facts led to a reasonable suspicion to expand the scope of the traffic stop, and continue investigating for drug violations. Larkins and defendant gave conflicting information about their destination, and were unclear about facts about a family member. A trained dog alerted that the car contained contraband drugs. A canine sniff of the car is not a search within the meaning of the Fourth Amendment, and even reasonable suspicion of drug activity is not

required. $404,905.00, 182 F.3d at 647. These facts, taken together, gave the officers reasonable suspicion to continue the traffic stop investigation beyond that of the traffic violation.

The search of the Jeep, which uncovered the cocaine and packaged cell phones, was permissible. First, defendant gave consent for the officers to search the vehicle. "A warrantless search of a vehicle does not violate the Fourth Amendment if the law enforcement officer first obtains voluntary consent to search." United States v. Siwek, 453 F.3d 1079, 1084 (8th Cir. 2006). Consent is voluntary if it is a free and unconstrained choice. Id.

Defendant gave his consent to search the Jeep while it was parked in the parking lot. The officers did not search then, but only after the dog alerted and the parties moved, with the agreement of defendant, to the Fenton Police Department. At this time, the Jeep was searched pursuant to defendant's earlier consent. Defendant did not rescind his consent. Defendant's consent was valid even if he were not the owner, because he possessed common authority over the vehicle because he was driving it, presumably from Oklahoma to Indiana, after getting permission from a third party friend. United States v. Beshore, 961 F.2d 1380, 1382 (8th Cir. 1992) (driver of car has common authority to consent to search when he had been given permission from owner to use car).

The scope of defendant's consent was not extended by the officers. The boundaries of a consent search are confined to the scope of the consent, and that scope is measured by an "objective reasonableness" standard. Siwek, 453 F.3d at 1084-85. Under this standard, which asks the question "what would a typical person understand to be the scope?", the officers searching the car in its entirety was proper. United States v. Lopez-Vargas, 457 F.3d 828, 830 (8th Cir. 2006); Siwek, 453 F.3d at 1085. Defendant gave a general consent to search the Jeep. There were

no limitations imposed by him. The officers looked under the spare tire and a loose panel, where the cocaine was located. The phones were located in a console. Both areas where evidence was found were not locked, were accessible to the officers, and defendant did not rescind the scope of his consent during the search. Because he did not limit his consent, the officers did not violate the scope of defendant's consent. Lopez-Vargas, 457 F.3d at 831.

Further, even if the officers did not have the consent of defendant to search the Jeep, the search was nonetheless valid. One exception to the warrant requirement is the "automobile exception" that "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004); see also United States v. Smart, 393 F.3d 767, 771 (8th Cir. 2005) (the officer's sighting of crack in the car properly led to search of vehicle). Here, the officers had probable cause that the car contained evidence of criminal activity. The officers knew that defendant slept at a rest area, that the registry of the vehicle was suspect, and that the occupants of the car had conflicting stories of their destination. The drug dog alerted to drugs in the car. These facts make the search valid under the automobile exception.

The search of defendant's person, which uncovered the cell phone, was also proper as a search incident to arrest. The arrest of defendant without a warrant was also proper. "To find probable cause to make a warrantless arrest, the facts and circumstances within the officers' knowledge must be sufficient to justify a reasonably prudent person's belief that the suspect has committed or is committing an offense." United States v. Roberson, 439 F.3d 934, 939 (8th Cir.), cert. denied, 127 S. Ct. 409 (2006). The officers must look at the totality of the circumstances when making the determination whether probable

cause exists.  United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005), cert. denied, 126 S. Ct. 1804 (2006).

Here, the totality of the circumstances would make a reasonable, prudent person believe that defendant was or is committing an offense.  In addition to the facts cited above supporting the search of the Jeep, the officers also discovered what they believed was cocaine in the Jeep.  The totality of these circumstances gave the officers probable cause to arrest defendant.

Because the arrest was lawful, the search of defendant's person was lawful.  A search incident to a lawful arrest is valid, and "requires no additional justification."  Robinson, 414 U.S. 218, 235 (1973); see also United States v. Lewis, 183 F.3d 791, 793-94 (8th Cir. 1999).  Therefore, the cell phone seized on defendant's person was lawful, and should not be suppressed.[2]

Defendant has no standing to challenge the search of Larkins's person, and ultimate seizure of her cell phone.  To be entitled to Fourth Amendment protection, defendant must show a legitimate expectation of privacy in the place searched.  United States v. Hill, 393 F.3d 839, 841 (8th Cir. 2005).  Defendant had no legitimate expectation of privacy in Larkins's person.  United States v. Bell, 183 F.3d 746, 749 (8th Cir. 1999) (no standing to challenge search of another's person).  The cell phone should not be suppressed.

---

[2]In addition, for the same reasons, the seizure of the cell phones in the console would also be valid as a search incident to arrest.  "When a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." United States v. Hrasky, 453 F.3d 1099, 1100 (8th Cir.), pet. for cert. filed, 75 USLW 3333 (Dec. 12, 2006).  This includes console areas.  United States v. Poggemiller, 375 F.3d 686, 688 (8th Cir. 2004), cert. denied, 544 U.S. 911 (2005).

**B. Statements**

Defendant's statements should not be suppressed. The government has the burden of establishing the admissibility of a defendant's statements by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972); Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). The first issue is whether the defendant's statements were voluntary or involuntary. Statements are constitutionally involuntary if they are the result of government overreaching, such as mental or physical coercion, deception, or intimidation. Connelly, 479 U.S. at 169-70; United States v. Goudreau, 854 F.2d 1097, 1099 (8th Cir. 1988).

Next, the court must determine whether or not defendant was entitled to be advised of his constitutional rights to remain silent and to counsel, as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966). This depends upon whether he was subjected to interrogation in a custodial setting. "Miranda warnings are due only when a suspect interrogated by the police is 'in custody.'" Thompson v. Keohane, 516 U.S. 99, 102 (1995).

Defendant's statements during the traffic stop, concerning his travel plans and his agreement to move the vehicle and consent to search his vehicle, should not be suppressed, because he was not in custody. "Miranda warnings are required only where a person's freedom has been so restricted as to render him "in custody." United States v. Martinez, 462 F.3d 903, 908 (8th Cir. 2006), cert. denied, 2007 WL 408193 (U.S. Mar. 5, 2007). Whether a person is "in custody" depends on whether he has been arrested, or whether his freedom has been limited such that it rises to the degree of a formal arrest. Martinez, 462 F.3d at 909. The Supreme Court has held that a normal traffic stop does not rise to the level of custody for Miranda purposes. Berkemer v. McCarty, 468 U.S. 420 (1984).

Here, defendant was not subjected to "restraints comparable to those associated with formal arrest" when he made the above

statements.  Berkemer, 468 U.S. at 441.  He had not been stopped for a long period when he made the statements, there was no threatening or coercion by the officers, and Gonzales was allowed to drive his own vehicle from the side of the highway, to the parking lot, and then to the Fenton Police Department.  He was not in custody, and there are no facts indicating his statements were the result of coercion or otherwise involuntary.  These statements should not be suppressed.

Defendant's post-arrest statement, that he did not know the drugs were in the Jeep, should also not be suppressed because he was not asked any question.  "Voluntary statements of any kind, not made in response to police interrogation, are not barred by the Fifth Amendment and their admissibility is unaffected by Miranda and its progeny."  United States v. Wood, 545 F.2d 1124, 1127 (8th Cir. 1976).

Whereupon,

**IT IS HEREBY ORDERED** that the motion of the government for a hearing on suppression issues (oral motion filed February 12, 2007) is sustained.

**IT IS HEREBY RECOMMENDED** that the motion of defendant for suppression (oral motion filed February 12, 2007) be denied.

The parties are advised they have until March 27, 2007, to file written objections to this Order and Recommendation.  The failure to file objections may result in a waiver of the right to appeal issues of fact.

      /S/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 20, 2007.